# TRIPLER *v.* LINDE.

---

PATENTS; INTERFERENCE; PRIORITY OF INVENTION; ESTOPPEL; EVIDENCE; ABANDONED EXPERIMENT.

1. A party to an interference who in his application made oath that his invention had not been patented to him or to others, with his knowledge or consent, in any country, cannot be heard to claim that a prior British patent granted him and an application here for the same invention, abandoned a few days after the filing of his present application, disclosed the invention in issue, as such a claim would be an admission of wilful fraud and perjury.

2. In an interference proceeding, the abandonment by one of the parties of a prior application for a patent, relied on as disclosing the invention in issue, four years before his present application, and total and unexplained inactivity in regard to the invention during that time, necessarily leads to the conclusion that what he had done was no more than an abandoned experiment.

No. 220.   Patent Appeals.   Submitted November 20, 1902,   Decided December 3, 1902.

The COURT in the opinion stated the facts as follows:

This case comes to us from the Patent Office.    It is an interference case, wherein the subject-matter of controversy is a process of refrigerating and liquefying atmospheric air or other gases.    The invention is stated in several counts or claims, as follows:

" 1. The process of refrigerating air or other gas consisting in compressing the gas, cooling it, expanding it through a suitable valve directly into a space maintained at a lower pressure and causing the expanded cold gas to absorb heat to its full capacity from compressed gas about to be expanded.

" 2. The process of refrigerating and liquefying air or other gas consisting in compressing the gas, cooling it, expanding it through a suitable valve directly into a space maintained at a lower pressure and causing the expanded cold gas to absorb heat to its full capacity from compressed gas about to be expanded, whereby the gas is progressively cooled until its critical temperature is reached and a portion of it thereafter liquefies.

" 3. The process of liquefying atmospheric air which consists in causing compressed and cooled air to condense by the continuous expansion of itself around the outside of the conduit in which it is held and through which it passes until the temperature of liquid air is obtained.

" 4. The process consisting in causing compressed air to be expanded in such manner that its degree of temperature will be diminished, causing the cold expanded air to absorb heat to its full capacity from the air about to be expanded, continuing these steps, whereby the mixture will be lique-

fied, causing the resulting liquid to absorb heat from air about to be expanded, and causing the more volatile gas thus liberated (nitrogen) to absorb heat from the air about to be expanded.

" 5. The process of separating air into two parts, one rich in oxygen, and the other poor in oxygen, consisting in liquefying the air and subjecting the liquid to fractional distillation by heat derived from compressed air about to be liquefied.

" 6. A liquefier for atmospheric air, consisting of a casing, a pipe in said casing, means for supplying compressed air to one end of said pipe, and an expander at the other end, the parts being so arranged that the air as it leaves the expander passes back over the pipe whereby upon continuous operation the air is liquefied.

" 7. A liquefier for atmospheric air provided with a pipe to which air under pressure is supplied combined with an expansion valve or nozzle and a casing or other means arranged to direct the flow from the valve or nozzle over or along the said pipe.

" 8. An apparatus for the separation of air into two parts, one rich in oxygen and the other poor in oxygen; and consisting of means for liquefying the air and subjecting the said liquid to fractional distillation by heat derived from compressed air about to be liquefied.

" 9. An apparatus for the separation of air into two parts, one rich in oxygen and one poor in oxygen; and consisting of means for liquefying the air, means for subjecting the said liquid to fractional distillation by heat derived from compressed air about to be liquefied, and means for utilizing the distilled nitrogen to cool compressed air about to be liquefied.

" 10. An apparatus for the separation of air into two parts, one rich in oxygen and the other poor in oxygen; and consisting of means for liquefying the air, means for subjecting the said liquid to fractional distillation by heat derived from compressed air about to be liquefied, and means

for utilizing the distilled oxygen to cool air about to be liquefied."

Five of these counts, as will be seen, are for a process, and five for an apparatus. They all appear in the petition and specifications filed by the appellee, Carl Linde, and were suggested by the office, according to its practice, to the appellant, Charles E. Tripler.

Carl Linde, the appellee, was the first to apply to the Patent Office. His application was filed on July 9, 1895. Afterward he divided it, leaving the original application to be for the process, and making the subdivisional application to be one for the apparatus. At or about the same time he applied for patents in various foreign countries, and subsequently procured a patent from Germany dated on June 4, 1895; one from Austria dated on June 27, 1895; one from Great Britain on June 28, 1895; one from Switzerland on June 29, 1895; one from France on July 3, 1895, and one from Belgium on July 3, 1895. The application was permitted to linger in the office for several years with only formal steps taken therein from time to time.

Charles E. Tripler, the appellant, came into the office with his application on April 12, 1897. His application also was permitted to go slowly through the usual routine of the office. Finally, on June 20, 1899, an interference was declared between the two applications. Both parties thereupon filed their preliminary statements.

Linde, in his preliminary statement, alleges conception by him of the invention in November of 1894, and reduction to practice in April of 1895. These dates, however, are not regarded as important, as the only testimony taken on his behalf consisted of pamphlets and addresses in which he published his discovery and invention; and the date of the filing of his application (July 9, 1895) is regarded as sufficient for his purpose.

Tripler, in his preliminary statement, alleged conception by him of the invention on January 1, 1890; the embodiment of the idea in a model machine finished on January 1, 1891; and full reduction to practice in a full-sized ma-

chine on January 1, 1893; and that he has since manufactured the machines for use and sale.

The tribunals of the Patent Office unanimously concurred in awarding judgment of priority of invention to Linde. From the decision of the Commissioner of Patents to that effect Tripler has brought his case to this court by appeal.

*Mr. H. A. West* for the appellant.

*'Mr. H. A. Seymour* for the appellee.

Mr. Justice Morris delivered the opinion of the Court:

The record in this case is quite voluminous. The greater part of it consists of the testimony taken on behalf of the appellant, which occupies more than five hundred printed pages of the record. And yet a careful perusal of this voluminous mass leads us to the same conclusion that was reached in the case by the examiner of interferences, who analyzed and considered it with the most painstaking industry and the most earnest and conscientious care, that it is a mass of inconsistency, contradiction, incoherence, and utter insufficiency to establish any right or title in the appellant to the invention which he claims at any time before the filing of his application on April 12, 1897. The fantastic dates claimed in his preliminary statement are shown to be utterly without foundation and to have been adopted without any regard for historic accuracy. His own admissions are sufficient to discredit his case; and the indefinite and unsatisfactory character of many of his statements, where he could have been accurate, if he really had the invention under consideration, is sufficient to warrant disbelief in his pretensions.

There is only one feature of certainty in the whole mass that has any legitimate bearing on the appellant's claims; and that is the fact that, in the year 1893, he applied for and received an English patent, No. 4,210 of 1893, dated November 22, 1893, and that he filed an application in our Pat-

ent Office, No. 436,804, on February 27, 1893, conceded to
be substantially for the same invention that was covered by
the English patent, but which application was afterward
abandoned a few days after the application which is in the
present interference was filed: and it is now claimed that
both the English patent of 1893 and the application No.
436,804 of February 27, 1893, disclose the same invention
that is now involved in this interference. The claim, how-
ever, cannot well be maintained without an admission of de-
liberate fraud and wilful perjury on the part of appel-
lant: for in his affidavit filed with his present application he
makes oath that this invention has not been patented to him
or to others, with his knowledge or consent, in any country.
When confronted on cross-examination with this inconsist-
ency, the appellant sought to give a lame and halting and
wholly unsatisfactory explanation of it. We prefer to be-
lieve that the appellant had no deliberate purpose to com-
mit fraud and perjury in his application; and therefore we
are disposed to think with the Commissioner of Patents that
the idea that this invention was embodied in and disclosed
by the British patent is an afterthought with the appellant.
We cannot regard that patent or the appellant's abandoned
application of 1893 as disclosing the present invention.
And there is no other testimony worthy of consideration
which does disclose it at any time prior to the filing of the
application which has led to this interference.

To the exceedingly careful investigation of this case by
the Commissioner and the tribunals of the Patent Office we
can add nothing. We fail to see how they could well have
reached any different conclusion than that to which they
came. The appellant is entitled to no earlier date for the
conception of the invention than the date of the filing of his
application, April 12, 1897, while the appellee is undoubt-
edly entitled to the date of his application, July 9, 1895,
if not to an earlier date. Moreover, as the Commissioner
very well remarks, even if the appellant had accomplished
something in 1893, the ultimate rejection and abandonment
of his application of that year, and his total and wholly un-

explained inactivity in regard to the invention for four years thereafter until the filing of his present application, would necessarily lead to the conclusion that what he then did was no more than an unsatisfactory, unsuccessful, and abandoned experiment.

We are of the opinion that the Commissioner of Patents was right in his decision, and that such decision should be affirmed; and that the appellee, Carl Linde, is entitled to judgment of priority of invention.

The clerk of the court will certify this opinion and the proceedings in the cause in this court to the Commissioner of Patents according to law.                    *Affirmed.*